# United States Court of Appeals for the Federal Circuit

2007-7060

JOHN E. JENNINGS,

Claimant-Appellant,

v.

GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs,

Respondent-Appellee.

Heather R. Cessna, ABS Legal Advocates, P.A., of Lawrence, Kansas, argued for claimant-appellant. On the brief was Virginia A. Girard-Brady.

Tara K. Hogan, Trail Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Ethan G. Kalett, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Associate Judge Lawrence B. Hagel

# United States Court of Appeals for the Federal Circuit

2007-7060

JOHN E. JENNINGS,

Claimant-Appellant,

v.

GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  November 20, 2007

_____

Before NEWMAN and DYK, Circuit Judges, and YEAKEL, District Judge.[*]

DYK, Circuit Judge.

Appellant John E. Jennings ("Jennings") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court").  The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("Board") denying Jennings's claim of clear and unmistakable error ("CUE") in two ratings decisions issued in 1954.  We affirm.

## BACKGROUND

Jennings served on active duty in the United States Army from October 1952 until his medical discharge in May 1954.  His pre-induction medical examination indicated that he had "dizziness and fainting spells, frequent indigestion, and stomach,

_____

[*] Honorable Lee Yeakel, District Judge, United States District Court for the Western District of Texas, sitting by designation.

liver, and intestinal problems," but nonetheless he was found qualified for induction. Jennings v. Nicholson, Vet. App. No. 04-0338, slip op. at 1 (Sept. 26, 2006). Jennings was hospitalized several times during service. The records from one such occasion, when Jennings was hospitalized in July 1953 for leg pain, state under "pertinent history" that Jennings reported a "many year history of 'colitis.'" J.A. at 31. Eventually he was found unfit for military duty because he suffered from ulcerative colitis, and he was discharged in April 1954.

In June 1954 Jennings filed a claim for service connection for ulcerative colitis. The Department of Veterans Affairs ("VA") regional office ("RO") denied this claim on September 15, 1954, finding that Jennings's ulcerative colitis "obviously existed prior to his military service" and had "improved at time of discharge." Jennings v. Nicholson, Vet. App. No. 04-0338, slip op. at 3 (quoting RO decision). On October 1, 1954, Dr. Joseph T. Lang, Jennings's private physician, sent a letter to the VA stating that he had treated Jennings for two years prior to his military induction, for a cold and an ankle injury, and that during that time Jennings had "revealed no evidence of colitis" and did not "have any complaints signifying colitis." J.A. at 222. The RO subsequently issued a second rating decision on October 8, 1954, affirming its earlier denial of service connection "based upon all the evidence of record," including Dr. Lang's letter. J.A. at 219. Consistent with the regulations then in effect, the letter notifying Jennings of this decision, dated October 12, 1954, stated that, if Jennings had no further evidence to submit, he had one year from the date of the letter in which to appeal the RO's decision. See 38 C.F.R. § 3.7 (1954). Jennings did not file an appeal.

In May 1995, Jennings filed an application that was construed by the VA as an attempt to reopen his claim for service connection on new and material evidence grounds. During the development of this claim, Jennings testified that the service-time hospital records (showing that he reported a history of colitis) were incorrect. See In re Jennings, No. 96-06 401 (Bd. Vet. App., June 9, 1997). Although the RO denied Jennings's claim to reopen, the Board found that Jennings's testimony constituted new and material evidence and directed the RO to reopen the claim. See id. The Board explained that "the hearing testimony is relevant and probative of the issue of service connection . . . and raises a reasonable possibility of changing the outcome of the previous decision." Id. The Board ordered additional development of the record in light of two changes in law since Jennings's 1954 claim: first, recorded clinical data from service medical records could no longer be used to rebut the presumption of soundness at enlistment; and second, claims could no longer be denied "based on the medical judgment of the members of the rating board," rather than on independent medical opinions. Id. The Board in 1998 ultimately granted service connection for ulcerative colitis, with compensation retroactive to the 1995 application to reopen, because it found the evidence insufficient to rebut the presumption of soundness at enlistment.

Thereafter, on September 28, 1999, Jennings filed a request to reopen the 1954 RO decision on grounds of CUE, claiming that the RO had committed CUE in 1954 in two ways. First, he argued that the RO had failed to apply the presumptions of soundness and aggravation, and that the requisite "clear and unmistakable evidence to establish that his condition preexisted service" was not present. Jennings v. Nicholson, Vet. App. No. 04-0338, slip op. at 5-6; see also 38 C.F.R. § 3.79 (1954) (setting out the

presumptions of soundness and aggravation). Second, Jennings argued that it was CUE for the RO to find that Dr. Lang's letter was not new and material evidence.

On November 7, 2003, the Board found no CUE in the 1954 decisions. In its decision the Board outlined the three-pronged test for CUE: 1) whether the correct facts, as known at the time, were not before the adjudicator or the existing statutes and regulations were incorrectly applied; 2) whether the error was undebatable and of the sort that would have "manifestly changed the outcome at the time it was made"; and 3) that the finding of CUE must be "based on the record and the law that existed at the time of the prior adjudication in question." In re Jennings, No. 02-08 796A (Bd. Vet. App., Nov. 7, 2003). As to the first prong, the Board found that "the RO's decisions were in accordance with the applicable laws and regulations, and that the evidence of record adequately supported the decisions." Id. The Board noted that the RO had considered the presumptions of soundness and aggravation, and that there was an evidentiary basis for concluding that those presumptions were rebutted. The Board found no evidence in the 1954 record of "an opinion relating the veteran's ulcerative colitis to his service," and noted that Dr. Lang's letter did not constitute objective evidence of a causal link between Jennings's service and his ulcerative colitis. Id. Finally, the Board noted that even assuming the RO committed some error, it would not have "manifestly changed the result" because "there was no evidence of record that the veteran's ulcerative colitis was incurred or aggravated during his service." Id.

On September 26, 2006, the Veterans Court affirmed the Board's disposition of the CUE claim, finding that "the proper weight to apply to [the evidence] is not a sufficient basis upon which to base a claim of clear and unmistakable error." Jennings

<u>v. Nicholson</u>, Vet. App. No. 04-0338, slip op. at 7. The Veterans Court also rejected Jennings's argument that the Board had erred by failing to provide a written statement of the reasons or bases for its conclusions, as required by 38 U.S.C. § 7104(d)(1). Jennings based this argument on the Board's failure to state explicitly that rebuttal of the presumption of soundness required "that the government prove by clear and unmistakable evidence that a veteran's condition preexisted service." <u>Jennings v. Nicholson</u>, Vet. App. No. 04-0338, slip op. at 8. The court agreed that the Board had not used the phrase "clear and unmistakable evidence" in reviewing whether the RO had committed CUE, but noted that the Board's findings were based on a review of all the evidence before the RO in 1954, and that the Board had discussed the RO's application of the presumptions of soundness and aggravation. The court concluded that "[b]ecause failure to expressly base a decision upon a finding of 'clear and unmistakable evidence' would not necessarily result in a finding of clear and unmistakable error in the regional office decision," Jennings had failed to show any prejudicial error in the Board's 2003 decision. <u>Id.</u>

Jennings timely appealed to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292(a).

DISCUSSION

This case presents two issues. First, Jennings contends that the Board erred in failing to specifically refer to the "clear and unmistakable evidence" standard for rebutting the presumptions of soundness and aggravation. Jennings argues that this failure constitutes a violation of 38 U.S.C. § 7104(d)(1), which requires all decisions of the Board to "include a written statement of the Board's findings and conclusions, and

the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record."

We reject the contention that section 7104(d)(1) requires the Board to use particular statutory language, or "terms of art," Appellant's Br. at 16, in addressing claims.[1]  Section 7104(d)(1) was enacted as part of the Veterans' Judicial Review Act ("VJRA").  See Pub. L. No. 100-687, § 205, 102 Stat. 4105, 4111 (1988).  The VJRA established the Veterans Court and provided for review by that tribunal of certain Board decisions.  As the legislative history to the VJRA makes clear, section 7104(d)(1) was "designed to promote the development of a record of the agency proceedings that would permit a reviewing court to understand and evaluate the proceedings as part of its review."  S. Rep. No. 100-418, at 37-38 (1988).  The required statement of reasons or bases would enable claimants to "understand the Board's response to the various arguments advanced by the claimant," and use this understanding "to make an informed decision on whether or not to request court review."  Id. at 38.  Neither the reviewing court nor the claimant would be aided in this regard by "bare conclusory statement[s]" in Board decisions; rather, the VJRA required "clear analysis and succinct but complete explanations."  Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

While section 7104(d)(1) plainly requires the Board to set forth its reasoning, mechanical requirements such as the one proposed by Jennings in this case are not necessary to facilitate effective judicial review by the Veterans Court and informed

---

[1]  We note, and Jennings concedes, that the 1954 RO rating decisions were not required to recite the specific standard of proof for rebutting the presumptions of soundness and aggravation.  See Natali v. Principi, 375 F.3d 1375, 1380 (Fed. Cir. 2004) (finding such recitations not required for rating decisions that predate the Veterans' Benefits Amendments of 1989).

decisionmaking by claimants. See, e.g., Morris v. Principi, 239 F.3d 1292, 1296 (Fed. Cir. 2001) (refusing to require the Board to explain its reasoning in the section of its opinion entitled "Reasons and Bases" rather than in the "Introduction"). In this case, the basis for the Board's rejection of Jennings's CUE claim is clear despite the Board's failure to state the precise standard applicable to its review. The Board recognized the presumptions of soundness and aggravation, thoroughly discussed the evidence before the RO in 1954, identified the evidentiary bases for the RO to conclude that the presumptions of soundness and aggravation were rebutted, and concluded that Dr. Lang's letter did not compel a determination of service connection. The Board's opinion explained that "[t]he Disposition Board Proceeding report's opinion that the veteran's ulcerative colitis existed prior to service provided an evidentiary basis to conclude the presumption of soundness was rebutted," and that "[t]he RO's determination were clearly supported by the veteran's service medical records, which . . . indicated that the veteran's ulcerative colitis preexisted his service and was not permanently aggravated during his service." In re Jennings, No. 02-08 796A (Bd. Vet. App., Nov. 7, 2003).

We find no reason to believe that section 7104(d)(1) was designed to work an across the board elimination of the presumption of regularity. A presumption of regularity applies to "official acts of public officers," and allows us, "[i]n the absence of clear evidence to the contrary," to "presume[] that public officers have properly discharged their official duties." Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (citing United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926)); see also Bernklau v. Principi, 291 F.3d 795, 801-02 (Fed. Cir. 2002) (presuming that Veterans Court weighed competing interests when declining to hear new arguments, although the

court did not explicitly state that it was doing so); <u>Pierce v. Principi</u>, 240 F.3d 1348, 1356 (Fed. Cir. 2001) (affirming Veterans Court's application of presumption of regularity to assume that RO had made a requisite finding). In situations such as this, where the Board has explained its decision in detail and has made clear the reasons and bases for the decision, and in substance has articulated the correct burden of proof (here by stating that the rebuttal of the presumptions was "clearly supported"), the Veterans Court can properly assume that the Board applied the correct standard. Applying the presumption of regularity does not violate section 7104(d)(1).

Second, Jennings argues that in rejecting his CUE claim the Board and the Veterans Court improperly required him to establish clear and unmistakable error in the RO's failure to award benefits in 1954. Both tribunals, in applying the CUE standard to Jennings's claim, looked at whether Jennings had shown any clear and unmistakable error that would have caused the RO in 1954 to award service connection. Jennings argues, however, that the correct test is whether there was a clear and unmistakable error in the RO's determination that Dr. Lang's letter was not new and material evidence, but for which error the RO would have reopened his claim in October 1954. Jennings does not clearly articulate the consequences of such a finding of CUE in the failure to reopen.

We have held that in order to establish CUE the claimant must show the existence of "an error that would manifestly change the outcome of a prior decision." <u>Bustos v. West</u>, 179 F.3d 1378, 1381 (Fed. Cir. 1999). We have not previously had occasion to determine the meaning of "manifestly change the outcome" in the context of a CUE claim with respect to an earlier new and material evidence claim, <u>i.e.</u>, whether

the veteran must establish CUE in the failure to reopen or CUE in the failure to award benefits. Nor need we do so here, because we agree with the government that the submission of Dr. Lang's letter in October 1954 was not a motion to reopen on grounds of new and material evidence. Rather it was merely an effort to supplement the record in a proceeding that had not yet become final.

Under prevailing regulations, the September 1954 denial of service connection would not have become final for one year. See 38 C.F.R. § 3.201(e) (1949) ("Decisions of adjudicating agencies of original jurisdiction do not become final until the expiration of the time within which an appeal may be filed."). The regulations provided that "evidence received prior to the expiration of the appeal period will be considered by the adjudicating agency of original jurisdiction and an appropriate determination made." Id. Jennings argues that the language in the "Confirmed and Continued Rating Sheet" he received in October 1954 (stating that the letter from Dr. Lang did not "contain any new and material evidence") demonstrates that the letter constituted an application to reopen his claim. Jennings contends that this constitutes a finding that the letter was not new and material evidence under the applicable standard for reopening finally disallowed claims. See 38 C.F.R. § 3.201(a) (1954).

The "new and material evidence" language in the printed form (the rating sheet) evidently was designed to cover multiple situations, including new and material evidence applications. However, the plain language of the regulations makes clear that the September 1954 decision was not yet final when Dr. Lang's letter was submitted. The regulations provided that only final decisions were subject to reopening based on new and material evidence. 38 C.F.R. § 3.201(a) (1954) ("New and material evidence .

. . submitted subsequent to the final disallowance of the claim, will constitute a new claim and have all the attributes thereof . . . .") (emphasis added). The letter from Dr. Lang was "evidence received prior to the expiration of the appeal period," not "evidence . . . submitted subsequent to the final disallowance of the claim," and the RO treated it accordingly.

The current statutory and regulatory scheme, while more procedurally detailed, similarly provides that claimants have one year in which to appeal an RO decision denying service connection, and that new evidence received prior to the expiration of that one-year time period (or, if an appeal already has been taken, prior to the appellate decision) is to be considered as having been filed in connection with the original claim. See 38 U.S.C. § 7105(b)(1), (c) (providing one year in which to file a notice of disagreement, after which time the RO decision becomes final); 38 C.F.R. § 3.156(b) (2007).

Accordingly, we hold that a claim becomes final and subject to a motion to reopen only after the period for appeal has run. Any interim submissions before finality must be considered by the VA as part of the original claim. In this case, as the VA stated in its letter to Jennings, the RO considered all of the evidence in October 1954 as part of the original claim, not as a motion to reopen. See J.A. at 219 ("Your claim for disability benefits has been carefully reviewed based upon all the evidence of record including a statement of Dr. Joseph T. Lang, dated October 1, 1954."). Therefore, in order to prevail on his claim of CUE, Jennings was required to show a clear and unmistakable error that manifestly would have changed the RO's decision to deny benefits in 1954. There has been no such showing here.

## CONCLUSION

For the foregoing reasons, the decision  below is

AFFIRMED.

## COSTS

No costs.