Citation Nr: 1214071 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 08-08 978 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUES

1. Entitlement to service connection for a low back disorder as a residual of injury.

2. Entitlement to an effective date earlier than December 16, 2005, for the granting of service connection for posttraumatic stress disorder (PTSD) with major depressive disorder and history of alcohol abuse, including on the basis of clear and unmistakable error (CUE) in a July 1984 rating decision initially considering and denying this claim or an October 2008 decision granting this claim.

REPRESENTATION

Appellant represented by: James G. Fausone, Attorney at Law

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Ann L. Kreske, Associate Counsel


INTRODUCTION

The Veteran served on active duty (AD) from August 1965 to September 1974. He also had additional, subsequent, service in the Army Reserves from 1993 to 2007, with several periods of active duty for training (ACDUTRA) and inactive duty training (INACDUTRA).

This appeal to the Board of Veterans' Appeals (Board/BVA) is from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. In a June 2005 rating decision, the RO denied service connection for a low back disorder as a residual of injury. And in a January 2010 rating decision, the RO determined there was not CUE in an October 2008 rating decision that had granted service connection for PTSD and had assigned an initial 50 percent rating for this disability retroactively effective from December 16, 2005. However, that January 2010 rating decision granted a temporary 100 percent rating for the PTSD under 38 C.F.R. § 4.29, as of May 21, 2009, because the Veteran had been hospitalized for over 21 days for treatment of this disability. And effective August 1, 2009, upon termination of that temporary 100 percent rating, there would be a 70 percent rating for his PTSD (so also an increase from the initial 50 percent rating for this disability).

As support for his remaining low back disorder claim, the Veteran testified at a videoconference hearing in January 2010 before the undersigned Veterans Law Judge of the Board. During the hearing the Veteran submitted additional evidence and waived his right to have to RO initially consider it. 38 C.R.F. §§ 20.800, 20.1304 (2011). Also during that hearing, because of his financial hardship, the Board advanced this appeal on the docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002). And in March 2010, the Board remanded this claim for further development and consideration - including clarifying the exact dates when the Veteran was on ACDUTRA and INACDUTRA and for a medical nexus opinion concerning the etiology of this claimed disorder and its possible relationship to an injury (muscle strain) he had sustained during service.

Meanwhile, in yet another decision since issued in April 2010, the RO also granted a total disability rating based on individual unemployability (TDIU) on account of the Veteran's psychiatric disability, which is his only service-connected disability. The effective date of the TDIU was February 5, 2010, the date of receipt of his application (VA Form 21-8940) for this benefit. It was additionally determined that he was eligible for Dependents' Educational Assistance (DEA) as of this same date, February 5, 2010.

In an even more recent December 2011 rating decision, the RO additionally determined there was not CUE in an earlier July 1984 decision that denied service connection for "delayed stress syndrome" (i.e., PTSD) and adjustment disorder with mixed emotional features.

So in determining whether the Veteran is entitled to an earlier effective date for the grant of service connection for his psychiatric disability, the Board will not only consider whether there was CUE in the RO's October 2008 decision, but also in that earlier July 1984 decision.

On the other hand, since the Veteran has withdrawn his appeal of his remaining claim for service connection for a low back disorder, the Board is dismissing rather than deciding this remaining claim. See 38 C.F.R. § 20.204 (2011).


FINDINGS OF FACT

1. On December 22, 2011, the Veteran's attorney submitted a statement indicating the Veteran is withdrawing his appeal for service connection for a low back disorder; the RO received this statement on December 27, 2011, and forwarded it on to the Board, and the Board received it on March 21, 2012, prior to promulgating a decision in this appeal.


2. In August 1983 the Veteran filed his initial claim for service connection for PTSD (then claimed as "delayed stress syndrome", etc.), which the RO considered and denied in October 1983.

3. Later in October 1983, in response, he filed a timely notice of disagreement (NOD) to initiate an appeal of that decision.

4. Rather than issuing a statement of the case (SOC), the RO instead readjudicated this claim in a July 1984 rating decision but continued to deny it, even when considering additional evidence since the initial October 1983 decision.

5. The Veteran did not appeal that July 1984 decision that terminated any pending status of his August 1983 claim and denial of that initial claim in October 1983.

6. He also did not appeal a more recent August 1989 RO decision that denied his petition to reopen this claim.

7. That July 1984 RO decision was adequately supported by the evidence then of record and not undebatably erroneous, egregious, or fatally flawed; it is not shown the RO did not have the correct facts, as they were known at that time, or incorrectly applied statutory or regulatory provisions then in effect, such that the outcome of the claim would have been manifestly different but for the alleged error.


CONCLUSIONS OF LAW

1. The criteria are met for withdrawal of the claim for service connection for a low back disorder. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2002); 38 C.F.R. § 20.204 (2011).

2. The criteria also are met, however, for a slightly earlier effective date of March 26, 2005 (rather than December 16, 2005), for the grant of service connection for PTSD. 38 U.S.C.A. § 5110 (West 2002); 38 C.F.R. §§ 3.1, 3.105, 3.155, 3.157, 3.159, 3.400 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Duties to Notify and Assist

Review of the claims file reveals compliance with the Veterans Claims Assistance Act (VCAA), 38 U.S.C.A. § 5100 et seq. See 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The duty to notify was accomplished by way of VCAA letters from the RO to the Veteran dated in April 2005 and August 2009. These letters satisfied the notification requirements of the VCAA consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) by: (1) informing him of the information and evidence not of record that was necessary to substantiate his claims, (2) informing him of the information and evidence that VA would obtain and assist him in obtaining, and 
(3) informing him of the information and evidence he was expected to provide. See also Pelegrini v. Principi, 18 Vet. App. 112 (2004) (Pelegrini II); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). Also, March 2006, November 2008, and August 2009 letters notified him of the "downstream" disability rating and effective date elements of his claims. Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006); aff'd sub nom. Hartman v. Nicholson, 483 F.3d 1311 (2007). Thus, he has received all required notice.

Consider, as well, that the RO issued that August 2009 VCAA notice letter prior to initially adjudicating his CUE claim in the January 2010 and December 2011 decisions mentioned, so in the preferred sequence. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004) (Pelegrini II). Thus, there is no timing error with regards to the provision of that August 2009 VCAA notice letter since it preceded the initial adjudication of this CUE claim. And even had, per chance, it not, VA would only have needed to provide all necessary notice and then readjudicate the claim, such as in an SOC or supplemental SOC (SSOC), to preserve the intended purpose of the notice and in turn rectify ("cure") the timing defect in the provision of the notice. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). In that eventuality, the intended purpose of the notice would not have been frustrated and he still would have been given an opportunity to participate effectively in the adjudication of the claim. Moreover, and in any event, the VCAA does not apply to CUE claims, irrespective of whether the Board or, as here, RO issued the decisions in question being collaterally attacked. See Livesay v. Principi, 15 Vet. App. 165 (2001)(en banc) (holding VCAA does not apply to Board CUE motions) and Baldwin v. Principi, 15 Vet. App. 302 (2001) (holding the VCAA does not apply to RO CUE claims, either); Parker v. Principi, 15 Vet. App. 407 (2002).

Keep in mind also that the Veteran is withdrawing his appeal of his claim for service connection for a low back disorder. So even were the Board to assume for the sake of argument that he did not receive the required VCAA notice concerning this claim, this ultimately would amount to no more than nonprejudicial, i.e., harmless error. 38 C.F.R. § 20.1102. See also Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (holding that, as the pleading party attacking the agency's decision, the Veteran, not VA, has the burden of proof of showing there is a VCAA notice error in timing or content and, moreover, that it is unduly prejudicial, meaning outcome determinative of the claim). There simply is no such possibility in this particular instance given his withdrawal of this claim.

And as for the duty to assist, the RO obtained his service personnel records (SPRs), service treatment records (STRs), and VA and private treatment records. Moreover, the Board finds that an examination and opinion are not needed to fairly decide his earlier effective date claim since it is premised on the notion of CUE, so based on a collateral, after the fact, attack of prior decisions in years past. See 38 U.S.C.A. § 5103A(d)(2)(A)-(C); 38 C.F.R. § 3.159(c)(4)(A)-(C). In Chotta v. Peake, 22 Vet. App. 80, 84-85 (2008), the Court determined that in claims for earlier effective dates - including, as here, partly predicated on CUE as a means of collaterally attacking a prior final and binding decision, VA may need to obtain a "retrospective medical opinion" to determine the severity of the disability in years past. No such additional opinion is needed in this particular instance, however, since there are sufficient medical findings of record at the relevant times in question - in 1984 and 2008 - to make this critical determination and address prior diagnoses and their etiologies. Resolution of this earlier effective date claim also is more so determined by when the Veteran filed and refiled this claim, which is a factual, not medical, determination.

He and his attorney also have submitted statements in support of the claim, including as recently as December 2011. Thus, as there is no indication that any other relevant evidence remains outstanding, the duty to assist has been met. 38 U.S.C.A. § 5103A.

II. Service Connection for a Low Back Disorder

The Board may dismiss any appeal that fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2002). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2011). Withdrawal may be made by the appellant or by his authorized representative. Id. 

In a statement submitted by his attorney to the RO in December 2011, and received at the Board in March 2012, the Veteran withdrew his appeal for service connection for a low back disorder. Hence, there remain no allegations of errors of fact or law for appellate consideration concerning this claim. Accordingly, the Board does not have jurisdiction to review the appeal of this claim and it is dismissed.

III. Effective Date Earlier than December 16, 2005, for the Grant of Service Connection for PTSD

According to 38 C.F.R. § 3.104(a), a decision of a duly constituted rating agency or other agency of original jurisdiction shall be final and binding on all field offices of VA as to conclusions based on the evidence on file at the time VA issues written notification in accordance with 38 U.S.C.A. § 5104. A final and binding agency decision shall not be subject to revision on the same factual basis, except by duly constituted appellate authorities or except as provided in 38 C.F.R. § 3.105 and § 3.2600. The section 3.2600 exception pertains to situations when the claimant filed a timely NOD following the decision in question, to initiate an appeal. 

Whereas the section 3.105 exception allows for the revision of the decision in question on the grounds of CUE. According to 38 C.F.R. § 3.105(a), where the evidence establishes such error, the prior decision will be reversed or amended. A rating or other adjudicative decision that constitutes a reversal of a prior decision on the grounds of CUE has the same effect as if the corrected decision had been made on the date of the reversed decision. 38 U.S.C.A. § 5109A; 38 C.F.R. § 3.105(a).

The Court has established a three-prong test defining CUE. The three prongs are: (1) either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable and of the sort that, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the adjudication in question. See Damrel v. Brown, 6 Vet. App. 242, 245 (1994); Russell v. Principi, 3 Vet. App. 310, 314 (1992). 

"In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." Id.; see also Eddy v. Brown, 9 Vet. App. 52, 54 (1996). An asserted failure to evaluate and interpret correctly the evidence is not CUE. See id.; Damrel v. Brown, 6 Vet. App. 242, 245-246 (1994). "[I]t is a very specific and rare kind of 'error.' It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Thus, even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, [CUE]." Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993) (emphasis in the original). The failure to fulfill the duty to assist also cannot constitute CUE. See Crippen v. Brown, 9 Vet. App. 412, 424 (1996); Caffrey v. Brown, 6 Vet. App. 377 (1994). 


Generally, and except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation (DIC) based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110(a) (West 2002); 38 C.F.R. § 3.400 (2011). If a claim for disability compensation, i.e., service connection, is received within one year after separation from service, the effective date of entitlement is the day following separation or the date entitlement arose. 38 C.F.R. § 3.400(b)(2).

However, a rating decision becomes final and binding if the Veteran does not timely perfect an appeal of the decision. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104(a), 3.160(d), 20.200, 20.302, 20.1103. Previous determinations that are final and binding, including decisions of service connection, will be accepted as correct in the absence of collateral attack by showing the decision involved CUE. 38 C.F.R. § 3.105(a).

The Court held in Sears v. Principi, 16 Vet. App. 244, 248 (2002) that, "[t]he statutory framework simply does not allow for the Board to reach back to the date of the original claim as a possible effective date for an award of service-connected benefits that is predicated upon a reopened claim." In order for the Veteran to be awarded an effective date based on an earlier claim, he has to show CUE in the prior denial of the claim. Flash v. Brown, 8 Vet. App. 332, 340 (1995). Moreover, there is no basis for a free-standing earlier effective date claim from matters addressed in a final and binding rating decision. See Rudd v. Nicholson, 20 Vet. App. 296 (2006).

The proper effective date for new and material evidence other than STRs received after a final disallowance is the date of receipt of the claim to reopen or date entitlement arose, whichever is later. 38 U.S.C.A. § 5110(i); 38 C.F.R. §§ 3.400(q)(2), 3.400(r).


But when evidence, other than STRs, is received in the appeal period following a subsequent disallowance, resulting in a later grant of service connection, the effective date will be as though the former decision had not been rendered. 38 C.F.R. § 3.400(q)(1).

A specific claim in the form prescribed by the Secretary of VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C.A. § 5101(a). Any communication or action indicating an intent to apply for one or more VA benefits may be considered an informal claim. 38 C.F.R. § 3.155. An informal claim must identify the benefit sought, however, but need not be specific. See Stewart v. Brown, 10 Vet. App. 15, 18 (1997); Servello v. Derwinski, 3 Vet. App. 196, 199 (1992).

The term "application" is used interchangeably with "claim" and defined as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p); see also Rodriguez v. West, 189 F.3d. 1351 (Fed. Cir. 1999). Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155(a).

In certain instances, the date of outpatient or hospital treatment or date of admission to VA or uniformed services hospital will be accepted as the date of receipt of an informal claim. 38 C.F.R. § 3.157.

But while VA must interpret a claimant's submissions broadly, VA is not required to conjure up issues not raised by claimant. That is to say, VA is not required to anticipate any potential claim for a particular benefit where no intention to raise it was expressed. Brannon v. West, 12 Vet. App. 32, 35 (1998); Talbert v. Brown, 7 Vet. App. 352, 356-57 (1995).


Under certain circumstances, a statutory filing period may be equitably tolled due to conduct of VA. See Bailey v. West, 160 F.3d 1360, 1365 (Fed. Cir. 1998). Equitable tolling, as an example, is available where the claimant has actively pursued his judicial remedies, but has filed a defective pleading during the statutory period, or where a claimant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. Jaquay v. Principi, 304 F.3d 1276, 1282-83 ( Fed. Cir. 2002). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit Court) specifically held in Bailey that equitable tolling in the paternalistic Veterans' benefits context does not require misconduct, such as trickery; however, Bailey does require the Appellant to have been "misled by the conduct of his adversary into allowing the filing deadline to pass." Bailey, 160 F.3d at 1365; see also (William) Smith v. West, 13 Vet. App. 525 (2000). There must be a cause and effect, i.e., the complainant relied to his/her detriment on something that VA did or should have but did not do. See Cintron v. West, 13 Vet. App. 251, 257 (1999), citing Bailey, 160 F.3d at 1364.

Generally, a rating decision does not become final and binding until written notification of the decision is issued to the claimant. See 38 U.S.C.A. § 5104(a); 38 C.F.R. §§ 3.103, 3.104(a), 3.160(d), 19.25. See also Best v. Brown, 10 Vet. App. 322, 325 (1997) (for a VA decision to become final and binding on a Veteran, he or she must first receive written notification of the decision); see, as well, Tablazon v. Brown, 8 Vet. App. 359, 361 (1995), citing Hauck v. Brown, 6 Vet. App. 518 (1994) (where an appellant never received notification of a decision denying his or her claim, then the usual one-year limit for timely appealing the decision does not begin to accrue ("run"); instead it is tolled ("stopped"). The written notification also must explain the reasons and bases for the decision and apprise the Veteran of his or her procedural and appellate rights, in the event he or she disagrees with the decision and elects to appeal.


The Veteran contends that the effective date for the grant of service connection for his PTSD in the October 2008 rating decision should be August 1983, when he initially filed a claim for service connection for "delayed stress syndrome" (his presumed reference at the time to PTSD). He contends that, during the pendency of that August 1983 claim, he submitted a statement describing his experience in Vietnam and showing he had been diagnosed with PTSD by a VA examiner in May 1984. The Veteran contends that his PTSD and its relationship to his military service was evident even at the time of that initial claim in August 1983, even though the RO declined to grant this benefit when initially adjudicating his claim in a July 1984 rating decision.

In addition to considering the January 2010 rating decision that determined there was not CUE in the RO's October 2008 rating decision that had granted service connection for PTSD and had assigned an initial 50 percent rating for this disability retroactively effective from December 16, 2005, the Board also is considering whether there was CUE in the RO's earlier July 1984 rating decision that initially considered and denied this claim in its former guise as for "delayed stress syndrome."

The Veteran argues that the RO had sufficient evidence even when earlier deciding this claim in July 1984 confirming he had a delayed-onset psychiatric disorder that was due to his alleged stressors in service of a friend of his killed during guard duty and being assigned to grave registration duties. See also his attorney's recent December 2011 statement citing evidence in the file even at the time of that earlier 1984 decision (so not, in actuality, "new" evidence) that included: the Veteran's statement, dated October 25, 1983 (indicating participation in grave's registration), extracts from an Operational Report for the US Army Support Command (specifically referencing his grave's registration unit), and a Compensation & Pension (C&P) examination report, dated May 29, 1984, indicating a diagnosis of PTSD, with graves registration noted as a contributing stressor. The attorney therefore argues this evidence was clearly sufficient to establish service connection for PTSD under VA regulations in existence at the time and therefore, in turn, entitles the Veteran to an earlier effective date back to the date of receipt of his original claim for this mental disability.

Records in the file confirm the Veteran did, in fact, file an original claim for service connection for "delayed stress syndrome" in August 1983. As support for that initial claim, VA treatment records dated from November 1981 to January 1982 were obtained and associated with the claims file for consideration. The RO, however, denied that initial claim in an October 1983 rating decision on the premise that the psychiatric disability claimed, delayed stress syndrome, was not shown by the evidence then of record. Later that same month, in response, the Veteran submitted a statement in support of claim (on VA Form 21-4138), so within one year of receiving notification of that October 1983 rating decision. And that statement, when read liberally, may be construed as tantamount to a timely filed NOD with that October 1983 decision. 38 C.F.R. § 20.201; see also Gallegos v. Gober, 14 Vet. App. 50 (2000) (VA should liberally interpret a written communication that may constitute an NOD under the law), rev'd sub nom Gallegos v. Principi, 283 F. 3d 1309 (Fed. Cir. 2002) (the language of 38 C.F.R. § 20.201 properly implemented 38 U.S.C.A. § 7105, and assuming that the [claimant] desired appellate review, meeting the requirement of § 20.201 was not an onerous task). Consequently, that October 1983 rating decision was nonfinal and stemmed from his original August 1983 claim.

In that October 1983 NOD, he reported being assigned to grave registration duties while serving in Vietnam. He additionally submitted VA examination reports dated in May 1984, one of which documented his alleged stressor in service of being on grave registration duty and provided a diagnosis of chronic PTSD. The other May 1984 VA evaluation documented a reported history of adjustment difficulties while in service. The examiner indicated the most appropriate clinical picture at that time was suggestive of continuing adjustment and difficulties and exhibiting some emotional immaturity and inadequacy in handling relationships with other people. The diagnosis was adjustment disorder with mixed emotional features.


In June 1984, a letter from the Department of the Army indicated it was unable to verify that the 19th Supply and Service (S&S) Company, which the Veteran had identified in his October 1983 NOD as the unit in which he had served, was involved in a graves registration unit, since no records for the 19th S&S were available for the time period he was with the unit. That Deparment of the Army letter also indicated it was unable to locate any individual with the last name the Veteran had identified as someone who was killed in service.

An Army Support Command quarterly operational report ending in July 1966 was received, as well. This operational report identified various support functions of the command, including grave registration.

An SOC was never issued in response to the Veteran's October 1983 NOD. An appeal to the Board consist of a timely filed NOD in writing, and after an SOC has been furnished, a timely filed substantive appeal (e.g., VA Form 9 or equivalent statement). See 38 U.S.C.A. § 7105(a); 38 C.F.R. § 20.200. According to 38 U.S.C.A. § 7105(d)(1), once a claimant files a timely NOD, and the Agency of Original Jurisdiction (AOJ), which, here, was the RO, does not resolve the disagreement either by granting the benefit or through withdrawal of the NOD, such agency shall prepare an SOC. "Section 7105(d)(3) makes the furnishing 
of an [SOC] the event that triggers the Veteran's obligation to file a 'formal appeal' with the Board[.]" Cook v. Principi, 318 F.3d 1334, 1340-41 (Fed. Cir. 2002) (en banc).

An SOC must provide a claimant with (a) a summary of the evidence in the case relating to the issue or issues with which the appellant or representative has expressed disagreement; (b) a summary of the applicable laws and regulations, with appropriate citations, and a discussion of how such laws and regulations affect the determination; and (c) the determination of the AOJ, i.e., RO, on each issue and the reasons for each such determination with respect to which disagreement has been expressed. 38 U.S.C.A. § 7105(d); 38 C.F.R. § 19.29.


The Court has stated that where VA failed to furnish a Veteran with an SOC after an NOD was filed, the RO decision did not become final and binding, instead, the claim remained pending. Tablazon v. Brown, 8 Vet. App. 359, 361 (1995) ("[B]ecause the RO did not furnish the appellant with an SOC, he was unable to file a formal appeal to the BVA, and the November 1975 rating decision never became final."). Further, in Myers v. Prinicipi, 16 Vet. App. 228, 235-36 (2002), the Court determined that a Veteran's original service-connection claim was part of the current claim stream when he had requested appellate review of a prior RO decision, thereby placing the claim in appellate status. Significantly, the Court has clarified in subsequent caselaw that "Myers stands for the proposition that once an NOD has been filed, further RO decisions, which do not grant the benefit sought, cannot resolve the appeal that remains pending before the Board." Juarez v. Peake, 21 Vet. App. 232, 241 (2007); Smith v. Brown, 35 F.3d 1516, 1526 (Fed. Cir. 1994) (stating that, as an inferior tribunal, RO lacks authority to usurp Board by collaterally reviewing its decisions).

Here, after receipt of that October 1983 NOD, rather than issuing the required SOC, the RO readjudicated - but continued to deny - this claim on its underlying merits in a July 1984 rating decision because the evidence available at the time was deemed insufficient to establish any particular stressor or life-threatening event in service to which the Veteran's then current symptoms could be attributed.
Relatively shortly thereafter, in August 1984, the RO notified the Veteran of that decision continuing to deny his claim, and he did not perfect his appeal in response to that additional decision. 38 U.S.C.A. § 7105(a); 38 C.F.R. § 20.200. A subsequent, August 1989, RO decision determined he had not submitted any additional evidence (so not any new and material evidence) since that 1984 decision to reopen this claim. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a). And although appropriately notified of that additional August 1989 decision, that same month, he also did not appeal that decision. Decisions, if not appealed, become final and binding based on the evidence then of record. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104(a), 3.160(d), 20.200, 20.1103. Moreover, in Williams v. Peake, 521 F.3d 1348 (Fed. Cir. 2008), the Federal Circuit Court held that the pending status of a claim is terminated with a later final adjudication of an identical claim. 

So, here, at least arguably, any pending status of the claim stemming from the initial October 1983 decision was terminated by the readjudication of this same claim in the subsequent July 1984 decision and even more recent August 1989 decision, which were not appealed.

That July 1984 rating decision also did not involve CUE, although the Veteran and his attorney contend otherwise. The RO's failure to find a nexus or etiological link in that decision between the Veteran's military service and his psychiatric disorder did not rise to the level of CUE because the cause of his psychiatric disorder was not so patently evident at the time of that earlier decision that one could consider this matter "undebatable" such that reasonable minds could not differ. Although he had submitted a statement of alleged stressors in service and evidence showing diagnoses of various psychiatric disorders, including PTSD and adjustment disorder with mixed emotional features, at the time of that July 1984 rating decision the RO was unable to independently verify his alleged stressors in service to in turn confirm that his psychiatric disorders were due to or a consequence of those stressors. In other words, merely establishing he had then current mental illness of some sort, including apparently on account of PTSD, was not itself tantamount to granting service connection because it still needed to be established that a traumatic event (i.e., stressor) had occurred during his service so as to have precipitated this diagnosis or any other psychiatric diagnosis. And the evidence on this equally determinative issue was far less definitive as some of the evidence suggested the claimed events in service had occurred whereas other evidence did not, including some obtained from the service department. So even to now say the evidence on this point at the very least was in relative equipoise, meaning about evenly balanced for and against the claim, which in turn would require resolution of this doubt in the Veteran's favor under 38 C.F.R. § 3.102, does not rise to the level of CUE in that earlier decision - when considered after the fact - because this ultimately amounts to mere disagreement with how the RO weighed the evidence for and against the claim in that earlier decision.



The Veteran argues on his December 2010 VA Form 9 that, at the time of that July 1984 rating decision, the RO had the necessary and sufficient evidence - i.e., evidence of a verifiable stressor - to grant his claim for service connection for PTSD because it later granted service connection for PTSD in the October 2008 rating decision based on essentially the same evidence that he had previously submitted at the time of that July 1984 rating decision. He further contends that, at the time of that July 1984 rating decision, the RO had in its possession the quarterly operation report for the U.S. Army Support Command, the higher headquarters for the Veteran's unit of service, which identified graves registration as one of its functions. He maintains this piece of evidence should have been sufficient to apply the reasonable doubt doctrine under 38 C.F.R. § 3.102 in the verification of his alleged stressor. His attorney makes essentially these same arguments in his December 2011 statement. But, again, this argument amounts to their disagreement with how the RO weighed the evidence because they are essentially saying the RO should have at least concluded the evidence was in relative equipoise on this important issue. And this type of argument, as mentioned, is not reason or grounds for finding CUE. See Dobbin v. Principi, 15 Vet. App. 323, 326 (2001); Baldwin v. West, 13 Vet. App. 1, 5 (1999).

Indeed, to the contrary, at the time of the July 1984 rating decision, the RO actually was unable to independently verify that the Veteran's unit in service had been assigned to graves registration duty. While the U.S. Army Support Command may have been the higher headquarters for his unit at the time of his service, and while graves registration was identified as one of the support command's functions, there was no indication that his unit, or that he himself, had been assigned to this duty. It was not until much later, during his appeal of the October 2008 rating decision, that the U.S. Armed Services Center for Unit Records Research (CURR) was able to confirm that his unit in service was formed in July 1966 due to a merger of the 19th Quartermaster Company and the 526th Quartermaster Company, which had several similar operational missions that included graves registration. Thus, it was not until later that the RO was able to tie his specific unit in service to the duty of graves registration and confirm this in-service stressor.

The evidence on file at the time of the RO's July 1984 decision, which is the only evidence that may be considered in determining whether there was CUE in that decision, does not indicate that regulatory provisions of the time were incorrectly applied, though they do indicate that reasonable minds could differ on the determination of the claim. Because the record in July 1984 indicated the RO was unable to verify the Veteran's alleged in-service stressors, the RO's denial of the claim - at least at the time of that earlier decision - cannot be said to have been fatally flawed or undebatably erroneous. There was no "undebatable" error in that earlier denial of the claim. Russell, 3 Vet. App. at 313 (defining CUE as an error that is "undebatable," in that "reasonable minds could only conclude that the original decision was fatally flawed").

With regards to the Veteran's claim of CUE in the more recent October 2008 RO decision since granting service connection for his PTSD and assigning an initial 50 percent disability rating for it retroactively effective from December 16, 2005, records show he had filed a petition to reopen this previously denied, unappealed claim in June 1989. But the RO also had adjudicated this intervening claim in an August 1989 rating decision and had appropriately notified him of that decision and of his procedural and appellate rights. And he again had failed to perfect an appeal of the decision, so it, too, had become final and binding on him based on the evidence then of record. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104(a), 3.160(d), 20.200, 20.1103.

He again filed a petition to reopen this claim on March 26, 2005, however, rather than on December 16, 2005, as the RO has concluded. The RO adjudicated this claim in June 2005, so in the interim, finding that no new and material evidence had been received to reopen this claim. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156. But he filed a timely NOD in August 2005, in response, so within one year of receiving notification of that June 2005 rating decision - to in turn initiate an appeal of that intervening decision. In December 2005, he submitted a statement requesting withdrawal of his appeal. See 38 C.F.R. § 20.204. However, on the same date in December 2005, he also filed another petition to reopen this claim. 

And along with that December 2005 petition to reopen this claim, he also submitted additional SPRs and alluded to a November 2005 statement he previously had submitted providing a chronology of his military service and his duties and responsibilities while in service.

The RO readjudicated the claim by way of a rating decision dated in February 2006. Late that same month, he submitted a request for reconsideration of that February 2006 rating decision, and the RO complied and readjudicated the claim by way of a rating decision dated in May 2006. Thereafter, he filed a timely NOD with respect to that May 2006 rating decision. An SOC accordingly was issued in February 2008, after which he completed the steps necessary to perfect his appeal of the claim in March 2008 by also filing a timely substantive appeal (VA Form 9). 38 C.F.R. § 20.200. However, in the subsequent October 2008 rating decision that considered additional evidence in the form of stressor statements, a response from the CURR confirming his alleged stressors, and a VA examination report dated in September 2008, the RO granted service connection for PTSD and the initial 
50 percent disability rating, effective December 16, 2005, coinciding with the date of receipt of his most recent claim.

But the earlier June 2005 rating decision never became final and binding because, although he supposedly withdrew his appeal in December 2005, he concurrently filed a petition to reopen this same claim on the very same day of the very same month, so the effective date of the RO's eventual grant of service connection for PTSD should be March 26, 2005, the date of receipt of his most recent, immediately preceding, petition to reopen this claim (rather than December 16, 2005, when he supposedly withdrew and then immediately petitioned to reopen this claim). 
While the Board acknowledges his request to withdraw his appeal in December 2005, the Board also sees there was another statement dated on the same day in December 2005 (December 16, 2005) indicating he instead wanted for his appeal to continue. Specifically, he indicated that he wanted to reopen his claim for service connection for PTSD, and to this end he submitted additional evidence to continue his appeal in the form of statements of retirement points concerning his service in the Army Reserves.

A claim becomes final and subject to a motion to reopen only after the period for appeal has expired. As such, any interim submissions before finality attached for the June 2005 rating decision must be considered by VA as part of the Veteran's claim to reopen, which was dated in March 2005. See 38 C.F.R. § 3.156(b) (2011); Charles v. Shinseki, 587 F.3d 1318, 1323 (Fed. Cir. 2009); Jennings v. Mansfield, 509 F.3d 1362, 1368 (Fed. Cir. 2007); see also Roebuck v. Nicholson, 20 Vet. App. 307, 316 (2006); Meuhl v. West, 13 Vet. App. 159, 161-62 (1999). Furthermore, according to 38 C.F.R. § 3.165(c), if at any time after VA issues a decision on a claim, VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided on the claim, VA will reconsider the claim, notwithstanding paragraph (a) of this subsection, which is in reference to 38 C.F.R. § 3.156(a) otherwise requiring the submission of new and material evidence to reopen the claim. Consequently, as the Veteran submitted additional SPRs before finality attached to the June 2005 rating decision, the June 2005 rating decision was both nonfinal and on appeal when the RO granted service connection for PTSD in its October 2008 rating decision, and stems from the Veteran's March 2005 claim. 

Accordingly, in the October 2008 rating decision, the proper effective date for the award of service connection for PTSD should have been set as March 26, 2005, and not as December 16, 2005, so to this extent there was CUE in that October 2008 rating decision in not assigning this correct effective date. The finality of the prior July 1984 and August 1989 RO decisions, however, and the absence of any CUE in those prior decisions, which terminated the pending status of the 1983 claim, precludes the assignment of any earlier effective date. See Lalonde v. West, 12 Vet. App. 377 (1999) (the effective date of an award of service connection is not based upon the date of the earliest medical evidence demonstrating entitlement, but on the date that the application upon which service connection was eventually awarded was filed with VA). The provisions of 38 U.S.C.A. § 5110 refer to the date an "application" is received. And "date of receipt" means the date on which a claim, information or evidence was received by VA. 38 C.F.R. § 3.1(r). See also Livesay, 15 Vet. App. 165, 172 (2001) (holding that the plain meaning of § 5110 to be that "the phrase 'application therefore' means the application which resulted in 

the award of disability compensation that it to be assigned an effective date under section 5110."); Cook v. Principi, 258 F.3d 1311, 1314 (Fed. Cir. 2001) (affirming assignment of an effective date for a service-connection award based upon the reopened claim as the date on which the Veteran "first sought to reopen his claim"); Leonard v. Nicholson, 405 F.3d 1333, 1336-37 (Fed. Cir. 2005) (indicating that "no matter how [the Veteran] tries to define 'effective date,' the simple fact is that, absent a showing of CUE, he cannot receive disability payments for a time frame earlier than the application date of his claim to reopen, even with new evidence supporting an earlier disability date"). See, too, Ingram v. Nicholson, 21 Vet. App. 232, 249, 255 (2007) and McGrath v. Gober, 14 Vet. App. 28, 35 (2000) (indicating a claim that has not been finally adjudicated remains pending for purposes of determining the effective date for that disability, but conversely, that a claim that has become final and binding in the absence of an appeal and absent a showing of CUE does not remain pending and subject to an earlier effective date). 


ORDER

The appeal for service connection for a low back disorder as a residual of injury is dismissed.

However, a slightly earlier effective date of March 26, 2005, though no earlier date, is granted for the award of service connection for PTSD.




____________________________________________
KEITH W. ALLEN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs