Citation Nr: 1527821 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 09-46 947A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to an initial disability rating in excess of 30 percent for posttraumatic stress disorder (PTSD) prior to March 4, 2009.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel






INTRODUCTION

The Veteran served on active duty from December 1965 to December 1967, September 1968 to July 1970, and from October 1975 to February 1977. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee, which granted the Veteran's claim for an increased rating for PTSD, to the extent that it assigned a 100 percent rating, with an effective date of March 4, 2009. However, in February 2014, the Board determined that the rating decision on appeal was actually an April 2008 RO decision that granted service connection for PTSD, and assigned a 30 percent evaluation, with an effective date for service connection of September 11, 2006. Citing Jennings v. Mansfield, 509 F.3d 1362 (Fed.Cir.2007); Buie v. Shinseki, 24 Vet. App. 242 (2010). The Board further determined that the criteria for an evaluation in excess of 30 percent for PTSD prior to March 4, 2009 had not been met.

The appellant appealed to the U.S. Court of Appeals for Veterans Claims (Court). In November 2014, while his case was pending at the Court, the VA's Office of General Counsel and appellant's representative filed a Joint Motion requesting that the Court vacate the Board's February 2014 decision. That same month, the Court issued an Order vacating the February 2014 Board decision. 

The Board notes that a properly executed "appointment of veterans service representative organization as claimant's representative" (VA Form 21-22), dated in August 2006, is in favor of The American Legion. Also of record is a VA Form 21-22, dated in October 2012, that is in favor of the Veterans of Foreign Wars (VFW). That form did not include the co-signature of a representative of the VFW, which would tend to render it null and void. There is no need for clarification on the representation question. Indeed, the American Legion has submitted briefs in the Veteran's favor in January 2014 and June 2015.

The Board has not only reviewed the Veteran's physical claims file but also the Veteran's file on the "Virtual VA" system to insure a total review of the evidence. 

The issue of entitlement to service connection for coronary artery disease has been raised by the record in a January 2014 written brief presentation, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Consideration has been given to the argument that the service connection claim is inextricably intertwined with outcome of the increased rating claim on appeal. The Board does not agree. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both issues have been considered); see also Tyrues v. Shinseki, 23 Vet. App. 166, 178 (2009). The service connection claim may be adjudicated independent of the increased rating claim and vice versa and any claim for TDIU that would be tied to the service connection claim would be decided on when, and if service connection was granted. Therefore, the Board does not have jurisdiction over the issue of service connection for coronary heart disease, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 


FINDING OF FACT

Prior to March 4, 2009, the Veteran's service-connected PTSD was manifested by symptoms such as: depressed mood, anxiety, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). The Veteran's PTSD symptoms did not manifest by symptoms such as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships.




CONCLUSION OF LAW

The criteria for an initial rating in excess of 30 percent prior to March 4, 2009 for the Veteran's service-connected PTSD have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Assist

This appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection for PTSD. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). No additional discussion of the duty to notify is therefore required. 

VA also has a duty to assist the Veteran in the development of the claim, which is not abrogated by the granting of service connection. VA has obtained the Veteran's service treatment records and VA medical records identified by the Veteran as relevant to the appeal. The Veteran was also afforded a VA examination in April 2008. 

As highlighted by the November 2014 JMR, the Veteran, through his representative, expressed concern regarding the credentials and capabilities of the April 2008 examiner. The representative pointed out that the examiner was neither board certified nor listed to do business in the State of Georgia. Neither concern gives rise for the Board to question the competency of the examiner. 

First, there is no requirement that a VA examiner be required to hold a business license or be an authorized personal corporation as the representative indicates. No law, regulation or precedent has been provided to support this argument. There is similarly no requirement that a VA examiner be board certified in order to render a medical opinion. Indeed, contrary to the intimation of the representative that the examiner was not being "credible about his own practice," the Board notes that the examiner only identified himself as being "Psychiatrist, Board Eligible." he representative has provided no evidence to refute the examiner's credentials of being a licensed psychiatrist. The April 2008 examiner is found to be both competent and credible.

Having determined that examiner is competent; the Board also finds that April 2008 examination is more than adequate. The examination report and medical opinion is adequate for the purpose of deciding the claim, as it included a review of the claims file and medical history, an examination of the Veteran, and the opinion stated is supported by thorough explanations which are consistent with the medical professional's findings and the credible evidence of record. See Monzingo v Shinseki, 26 Vet. App. 97, 107 (2012) (holding that "examination reports are adequate when, as a whole, they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion" even when the rationale does not explicitly "lay out the examiner's journey from the facts to a conclusion") (citing Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners). There are no apparent inconsistencies or ambiguities in the examination report. VA's duty to obtain a VA examination and opinion has been met.

The Veteran has not identified any other relevant evidence that has not been requested or obtained. The Board finds that VA has substantially complied with the notice and assistance requirements and the Veteran is not prejudiced by a decision on his claim at this time. 

II. Principles for Rating Disabilities

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 
38 C.F.R. § 4.1. 

VA should interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability. 38 C.F.R. § 4.2. Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations apply, the higher of the two should be assigned where the disability picture more nearly approximates the criteria for the next higher rating. 38 C.F.R. § 4.7. 

In general, the degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55 (1994). 
Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. Fenderson v. West, 12 Vet. App. 119 (1999).

 III. Rating Criteria for PTSD

For the period prior to March 4, 2009, the Veteran's PTSD is evaluated as 30 percent disabling under the provisions of 38 C.F.R. § 4.130 , Diagnostic Code 9411, which directs that the General Rating Formula for Mental Disorders be applied.

 The General Rating Formula for Mental Disorders provides that a 30 percent rating is assigned where there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 


A 50 percent rating is warranted if the evidence establishes there is occupational and social impairment, with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent evaluation is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships. 

A 100 percent evaluation is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. 

When determining the appropriate disability evaluation to assign, the Board's primary consideration is a veteran's symptoms, but it must also make findings as to how those symptoms impact a veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442; see also Sellers v. Principi, 372 F.3d 1318 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms, a veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. 

Psychiatric examinations frequently include assignment of a Global Assessment of Functioning (GAF) score, which is defined by DSM-IV as number between zero and 100 percent, that represents the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health illness. Higher scores correspond to better functioning of the individual. 

Under DSM-IV, GAF scores from 51 to 60 are indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Scores from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

IV. Factual Background 

An April 2008 VA examination indicates that the Veteran had some degree of occupational and social impairment, as the examiner noted that the Veteran suffered from depressed mood, anxiety and chronic sleep impairment. However, the examiner found that the Veteran was mentally competent and that he did not have difficulty performing the activities of daily living. The Veteran reported that he and his wife lived with their daughter. The Veteran reported that he keeps to himself, except for his close family and that he helps out with his grandchildren. The examiner noted that the Veteran's behavior and thought processes were appropriate, and his judgment, abstract thinking and memory were within normal limits. There was also no homicidal or suicidal ideation. Hallucinations and obsessional rituals were absent. The Veteran had an exaggerated startle response and he was hypervigilant. 

The examiner diagnosed the Veteran with PTSD and opined that the Veteran's PTSD caused occupational and social impairment with occasional decrease in work efficiency and intermittent inability to perform occupational tasks, although the Veteran was generally functioning satisfactorily with routine behavior, self-care and normal conversation. The examiner indicated that he based his opinion on the following symptoms: depressed mood, anxiety and chronic sleep impairment. The examiner indicated that the Veteran had no difficulty understanding commands and that he did not appear to pose a threat of persistent danger or injury to himself or others. The Veteran had a GAF score of 54. 

In June 2008, the Veteran joined a PTSD Coping and Processing group. On evaluation for participation in the group, the Veteran had some degree of occupational and social impairment, as he had a few personal relationships and indicated that he worked for nine different companies between January 1968 and July 1993. The Veteran reported symptoms of isolation, irritability, feeling detached from others, difficulty concentrating, panic attacks, hypervigilance, frequent nightmares, depression, feeling nervous and feeling hopeless. The examiner found that the Veteran's memory and concentration were intact and his thought processes were logical and goal directed. The Veteran denied suicidal or homicidal ideation. No delusional or paranoid thought content was detected and the Veteran did not appear to be responding to any internal stimuli. The Veteran had a GAF score of 61. 

Notes from the PTSD Coping and Processing group described the Veteran as pleasant, alert, and attentive. Notes also indicate that he participated fully by sharing his input and providing relevant and supportive feedback to other members. The Veteran expressed concern for missing group members. The group was described as close-knit and toward the end of their sessions, the group went out to dinner after their session

In VA treatment records dated August 2008, the Veteran reported that he has experienced PTSD symptoms since he returned from Vietnam. The Veteran was appropriately groomed and dressed; his mood was "kind of in limbo;" his affect was sad and restricted and his thought content was logical and without psychotic ideation. The Veteran had adequate insight, judgment, memory and abstract reasoning. The Veteran was fully oriented. The Veteran showed some suicidal ideation but had no plan or intent to commit suicide. The examiner diagnosed the Veteran with PTSD but did not assign a GAF score. 

In September 2008, the Veteran attended an individual psychotherapy appointment. Notes indicate that the Veteran had a second heart attack in September 2008 after having a heart attack in 2006. The examiner noted that the Veteran's PTSD symptoms were exacerbated by his health stresses. The examiner diagnosed the Veteran with PTSD but did not provide a GAF score. 

V. Analysis

Having carefully considered all the evidence of record in light of the applicable rating criteria, the Board finds that prior to March 4, 2009, the Veteran's overall symptomatology and level of impairment have most nearly approximated those indicative of a 30 percent rating. An initial evaluation in excess of 30 percent prior to March 4, 2009 is not warranted. 38 C.F.R. § 4.7. 

Prior to March 2009, examiners noted that the Veteran experienced recurrent unpleasant memories of the traumatic events as well as interrupted sleep and some degree of voluntary social isolation. During his April 2008 VA examination, the Veteran reported that he had good family relationships. The examiner noted no abnormal mental trends involving delusions or hallucinations and indicated that the Veteran's thought content was devoid of homicidal and suicidal ideation. In June 2008, the Veteran reported symptoms of isolation, irritability, feeling detached from others, difficulty concentrating, panic attacks, hypervigilance, frequent nightmares, depression, feeling nervous and feeling hopeless. The Veteran also reported that he held nine different jobs between 1968 and 1993. In August 2008, the Veteran had some suicidal ideation but he had no plan to commit suicide. 

In his April 2009 Notice of Disagreement, the Veteran argued that the April 2009 rating decision, which granted the Veteran's 100 percent rating effective March 4, 2009, indicated that the 100 percent rating was based in part on the Veteran's GAF score of 50 during his March 2009 VA examination. The Veteran argues that he routinely received GAF scores of 49 or 50 beginning in August 2008 and is therefore entitled to a higher initial rating. 

The Board notes that while GAF scores may be used in determining an appropriate disability rating, it is one factor that must be considered in light of the Veteran's overall occupational and social impairment. A review of the Veteran's medical records during this timeframe show that the Veteran received treatment for his service-connected PTSD from August 2008 to January 2009, however, GAF scores were only recorded during the Veteran's April and June 2008 examinations. Respectively, these scores were 54 and 61, which are indicative of mild to moderate occupational and social impairment and are consistent with no more than the initial 30 percent rating assigned.

 A 50 percent rating is not warranted because the evidence does not show reduced reliability and productivity or difficulty in establishing and maintaining effective work and social relationships. During his April 2008 examination, the Veteran reported that his relationship with his wife and daughter as good. In addition, notes from the Veteran's participation in the PTSD Coping and Processing group indicate that he communicated well and regularly participated during the four month program. While the Veteran did have report symptoms of irritability, there was no evidence of disruptive behavior of a degree that would impair routine activities. Although the Veteran is not currently employed, the Veteran reported during his April 2008 examination that he remodeled houses for 30 years and that he had a good relationship with his supervisor and co-workers. The Veteran also reported that he stopped working after he had a heart attack. The April 2008 examiner also indicated that the Veteran had no difficulty understanding commands. The Board acknowledges the Veteran's January 2014 statement that it "has been a struggle 24 hours a day, 7 days a week," that he drifted from job to job, and that he experienced anger outbursts and "dark depression," however, the Board finds that these symptoms do not rise to the severity of occupational and social impairment with reduced reliability and productivity.

Therefore, the Board finds that the Veteran's PTSD does not more nearly approximate a rating in excess of 30 percent prior to March 4, 2009. Taken as a whole, the manifestations of the Veteran's PTSD are most analogous to those contemplated by a 30 percent evaluation. The extent and severity of the Veteran's actual PTSD symptoms reported and/or shown are suggestive of occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks; i.e., the level of impairment contemplated in the assignment of a 30 percent rating for psychiatric disabilities. See Mauerhan, supra; Vazquez-Claudio, supra. More severe symptomatology resulting in occupational and social impairment with reduced reliability and productivity was not shown during this timeframe. 

In reviewing the Veteran's medical records and lay statements, the Board finds that the Veteran's symptoms overall did not approximate the severity of those described under the 50 percent evaluation prior to March 4, 2009 for the reasons described above.

As the criteria for the next, higher, 50 percent rating are not met, it logically follows that the criteria for an even higher rating-70 or 100 percent-are likewise not met.

 VI. Other Considerations

The discussion above reflects that the rating criteria reasonably describes and contemplates the severity and symptomatology of the Veteran's service-connected psychiatric disability. The Veteran's disability is manifested by impairment in social and occupational functioning. The rating criteria contemplate these impairments; hence, referral for consideration of an extraschedular rating is not warranted. Thun v. Peake, 22 Vet. App. 111 (2008). 

The Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) has been raised. Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). Here, the Veteran has reported that he has been unemployed since he suffered a heart attack in 2006. There is no evidence of unemployability due to the Veteran's service-connected PTSD. Further consideration of TDIU is not warranted.

In summary, the Board finds that the Veteran's PTSD symptoms result in no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, irritability, suspiciousness and chronic sleep impairment. Accordingly, the Board concludes that reasonable doubt does not apply, and the criteria for a rating in excess of 30 percent for the Veteran's PTSD have not been met. 38 U.S.C.A. 
§ 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

An initial disability rating in excess of 30 percent prior to March 4, 2009 for PTSD is denied.


____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs