Citation Nr: 1823355 
Decision Date: 04/20/18 Archive Date: 04/26/18

DOCKET NO. 10-30 655 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Whether new and material evidence has been presented to reopen a claim of entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), depression, and anxiety, and if so, whether service connection may be granted.

2. Entitlement to service connection for a lumbar spine disability.

3. Entitlement to service connection for sciatica of the right lower extremity, to include as secondary to a lumbar spine disability.

4. Entitlement to service connection for a right hand disability.

5. Entitlement to service connection for right ear hearing loss.

6. Entitlement to service connection for fatigue, to include chronic fatigue syndrome, as a qualifying chronic disability under 38 C.F.R. § 3.317.

7. Entitlement to service connection for headaches, to include as a qualifying chronic disability under 38 C.F.R. § 3.317.

8. Entitlement to service connection for joint aches, to include as a qualifying chronic disability under 38 C.F.R. § 3.317.

9. Entitlement to service connection for muscle aches, to include as a qualifying chronic disability under 38 C.F.R. § 3.317.

10. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disability.


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

M. C. Wilson, Counsel


INTRODUCTION

The Veteran had active duty service from November 1983 to September 1991, which includes service in the Southwest Asia theater of operations during the Persian Gulf War.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. In December 2017, the Veteran testified at a hearing before the undersigned Veterans Law Judge.

The Veteran was previously represented by an attorney who is no longer accredited to represent claimants before VA. In February 2016, the Board sent the Veteran notice of this fact to his latest address of record. The letter advised him of his right to choose a different representative and it informed him that the Board would assume that he would like to represent himself if he did not respond within thirty days of the date of the letter. To date, the Veteran has not responded to the February 2016 letter; thus, he is considered unrepresented in this matter.

In light of the evidence of record, the Board has recharacterized the claims for service connection for depression and PTSD as a single claim for service connection for an acquired psychiatric disorder, to include PTSD, depression, and anxiety. See Clemons v. Shinseki, 23 Vet. App. 1 (2009 (the scope of a disability claim includes any disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record).

Generally, the Board does not have jurisdiction to consider a claim that was previously adjudicated and denied unless new and material evidence is presented. See Jackson v. Principi, 265 F.3d 1366, 1369 (Fed. Cir. 2001). The Board notes that a previous claim for service connection for PTSD was denied by the RO in February 2006 because the Veteran's service treatment records were silent for any complaint, treatment, or diagnosis of PTSD during service and his post-service VA treatment records were silent for a diagnosis of PTSD. Although the Veteran submitted a timely notice of disagreement with the February 2006 rating decision and the RO issued a statement of the case in June 2006, he did not perfect his appeal. Thus, the February 2006 rating decision became final based on the evidence then of record. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 20.202 (2017).

In the June 2009 rating decision on appeal, the RO denied the Veteran's February 2008 petition to reopen a claim for service connection for PTSD because VA was not in receipt of any new and material evidence in support of his claim and also denied a claim for service connection for depression on the merits. However, the Board finds that post-February 2006 medical records constitute new and material evidence of a current psychiatric diagnosis. As such, the Veteran's claim is reopened. See 38 C.F.R. § 3.156(b); Shade v. Shinseki, 24 Vet. App. 110, 118 (2010); see also Jennings v. Mansfield, 509 F.3d 1362, 1366 (Fed. Cir. 2007); Morris v. Principi, 239 F.3d 1292, 1296 (Fed. Cir. 2001) (refusing to require the Board to explain its reasoning in the section of its opinion entitled "Reasons and Bases" rather than in the "Introduction").

Before the present appeal was certified to the Board, the RO granted service connection for left ear hearing loss and tinnitus in an October 2017 rating decision. Thus, the Board finds that there is no present case or controversy for the Board to adjudicate with regard to the original claims for service connection and the Board will not address these issues at this time. Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997).

Additionally, during an April 2017 DRO hearing, the Veteran testified that he wished to withdraw his appeal of the following service connection claims: sciatica of the left lower extremity; lower extremity nervous system disease; a right leg disability; chest, heart pain as due to an undiagnosed illness; and a cognitive disorder as due to an undiagnosed illness. Thus, the Board will not address these issues at the present time.

Further, the Board notes that additional evidence regarding the claims for service connection for a lumbar spine disability and headaches was received after the most recent supplemental statement of the case was issued in October 2017. See March 2018 Buddy Statement. The Agency of Original Jurisdiction (AOJ) has not considered this new evidence and the Veteran did not submit a waiver of initial AOJ consideration. See 38 C.F.R. § 20.1304(c) (2016). However, in light of the Board's grant of service connection for these disabilities, the Board finds that the Veteran is not prejudiced by its consideration of the appeal at this time.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The issues of the Veteran's entitlement to a TDIU and to service connection for a right hand disability and fatigue are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.

FINDINGS OF FACT

1. The Veteran's current psychiatric disorder, diagnosed as unspecified depressive disorder, was incurred in service.

2. The Veteran's current lumbar spine disability, diagnosed as lumbar disc disease, spinal fusion, and lumbosacral strain, was incurred in service.

3. The Veteran's sciatica of the right lower extremity developed secondary to his service-connected lumbar spine disability.

4. The Veteran does not have right ear hearing loss for VA compensation purposes.

5. The Veteran's headaches had their onset in service.

6. In December 2017, prior to the promulgation of a decision in the appeal, the Veteran notified VA that a withdrawal of the appeal concerning his claim for service connection for joint aches is requested.

7. In December 2017, prior to the promulgation of a decision in the appeal, the Veteran notified VA that a withdrawal of the appeal concerning his claim for service connection for muscle aches is requested.


CONCLUSIONS OF LAW

1. The criteria for service connection for an unspecified depressive disorder are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017).

2. The criteria for service connection for a lumbar spine disability, diagnosed as lumbar disc disease, spinal fusion, and lumbosacral strain, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017).

3. The criteria for service connection for sciatica of the right lower extremity are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).

4. The criteria for service connection for right ear hearing loss are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.385 (2017).

5. The criteria for service connection for headaches are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017).

6. The criteria for withdrawal of the Veteran's appeal concerning his claim for service connection for joint aches have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

7. The criteria for withdrawal of the Veteran's appeal concerning his claim for service connection for muscle aches have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Service Connection Claims

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table).

Additionally, service connection may be established on a secondary basis for a disability which was either caused or aggravated by a service-connected disability. 38 C.F.R. § 3.310(a) (2017); Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

In making all determinations, the Board must fully consider the lay assertions of record. The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001).

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza, 7 Vet. App. at 511.

A. Acquired Psychiatric Disorder

During his December 2017 Board hearing, the Veteran reported that he has had psychological problems ever since he served in the Gulf War and noted that he withdrew from his wife and family and did not associate with coworkers. He has reported the following PTSD stressors related to his service in Southwest Asia: he participated in the destruction of an enemy air base; he witnessed numerous dead bodies and destroyed vehicles when he traveled down "the Highway of Death"; and he observed rounds land on the heads of enemy forces while he helped operate an M1 tank. See July 2009 Notice of Disagreement. He made similar reports in a September 2017 statement.

VA treatment records that are dated in June 2005 document the Veteran's report that his life has been a mess since he returned from Iraq and he has had depression for fourteen years, or since 1991. Records that are dated from July 2005 to November 2005 document diagnoses of dysthymia, substance abuse, generalized anxiety, mixed personality disorder, and major depression, and indicate that the Veteran has also attributed his depression to his low back pain. In July 2005, he reported that he frequently had bad dreams at night after service and a physician noted that he had racing, intrusive thoughts about how his former tank commander "messed up [his] life" and he began to have increased feelings of anger and frustration during service while serving under that tank commander. It was also noted that the Veteran demonstrated a progressive inability to function in job and social settings, which was accompanied by increasing frustration, anger, and depression.

During the appeal period, VA issued a September 2008 memorandum noting that it was unable to corroborate the Veteran's PTSD stressors, and upon examination in September 2017, it was noted that he does not have a diagnosis of PTSD that conforms to DSM-5 criteria. The examiner did note, however, that the Veteran currently has an unspecified depressive disorder and "other specified personality disorder with paranoid and schizoid features." According to the examiner, there were no records found that diagnose a depressive disorder until 2005, which is fourteen years after the Veteran's discharge from the Army, and thus, his depressive disorder is less likely than not related to his service.

Although the Veteran's service treatment records are not available for review, the Board finds that his reports that he has had psychological problems since service are both competent and credible. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge); see also Jandreau v. Nicholson, 492 F. 3d 1372, 1376 (Fed. Cir. 2007) ("the Board retains discretion to make credibility determinations and otherwise weigh the evidence submitted").

In addition, notwithstanding the September 2017 finding that his depressive disorder is less likely than not related to his service because a depressive disorder was not diagnosed until 2005, the Board finds it highly probative that a physician noted in 2005 that the Veteran's occupational and social functioning were declining progressively and were accompanied by increasing depression, which supports the Veteran's assertion that his disability had its onset prior to 2005. The Board also finds it probative that he made consistent reports of psychological problems that had their onset in service prior to filing a claim for VA compensation benefits. In light of the foregoing, the Board resolves any doubt in his favor and finds that the evidence supports a grant of service connection for an unspecified depressive disorder.

During his December 2017 Board hearing, the Veteran reported that a grant of service connection for a psychiatric disorder regardless of diagnosis would satisfy his claim for service connection. Thus, consideration of a grant of service connection for an additional psychiatric disorder is not necessary at this time. See December 2017 Hearing Transcript, p. 12; see also AB v. Brown, 6 Vet App. 35, 38 (1993). In addition, notwithstanding this finding, the Board notes that personality disorders are not considered "diseases or injuries" within the meaning of applicable legislation and, hence, do not constitute disabilities for VA compensation purposes. See 38 C.F.R. § 3.303(c) (2017).

B. Lumbar Spine Disability and Sciatica of the Right Lower Extremity

During his December 2017 Board hearing, the Veteran described three in-service back injuries in detail. First, on a windy day, he hit his back on the side of a truck and fell to the ground. Second, he slipped and fell on the fender of a tank when he attempted to climb on the tank while wearing muddy boots. Third, on a hot day during the summer, he experienced heat exhaustion, climbed up on a tank, slipped from his position, and fell backward to the ground. He testified that he did not have back problems prior to service and his back has bothered him on and off since service. In addition, in a March 2018 buddy statement, the Veteran's sister J.P. reported that she took the Veteran to a VA hospital in Pittsburgh, Pennsylvania, in early 1995 to address severe back pain.

VA treatment records that are dated in July 2005 and November 2005 indicate that the Veteran's active problems at that time included low back pain, and in July 2005, a physician reported that he had post-service difficulties with his joints and limbs that he attributed to the strenuous activities that took place during his military career until 1991. Notably, in June 2005, a clinician documented the Veteran's report that he has had back pain for twenty years.

In September 2017, a VA examiner diagnosed the Veteran with lumbar disc disease, spinal fusion, resolved right leg sciatica, and lumbosacral strain (per history). The examiner noted the Veteran's report that he hurt his back in service and continued having back pain after he left active duty, but also noted that Veteran reported that he did not develop disc problems while on active duty and a post-service fusion surgery corrected his sciatic symptoms. A 2008 CT scan of his lumbar spine revealed fracture of the left pars interarticularis at L5 along with degenerative changes of the discs and 2008 MRI showed disc bulges at L4-L5 and L5-S1 levels. According to the examiner, the Veteran presented in 2008 with a history of low back pain that led to sciatica and eventual spinal fusion and degenerative arthritis can be seen on X-ray, but this all occurred years after his time on active duty. The examiner noted that the Veteran has a history of heavy labor and heavy work, such as cutting firewood and working with tools in the yard while at home, and concluded that it is more likely than not that his current low back condition is more consistent with normal physiologic aging and a history of heavy labor than his reported time on active duty without accompanying documentation. Therefore, the claimed low back condition is less likely than not caused by or aggravated by his time on active duty.

The Board notes that the September 2017 examiner acknowledged that the Veteran has a history of heavy labor following service and concludes that his current lumbar spine disability may be attributed to aging and a history of heavy labor, but does not consider the Veteran's reports of in-service labor and strenuous activity, which are credible in light of the circumstances of his service. More specifically, his military occupational specialty was that of armor crewman and his military personnel records indicate that he was an M1A1 tank gunner. Thus, the Board affords little probative value to the examiner's opinion to the extent that it implies that the Veteran does not have a history of heavy labor in service.

Overall, the evidence is in favor of finding that the Veteran's current lumbar spine disability, identified as lumbar disc disease, spinal fusion, and lumbosacral strain, had its onset during the Veteran's period of active service. As such, service connection is granted.

The Board notes that the Veteran has demonstrated right lower extremity sciatica secondary to his now service-connected lumbar spine disability during the appeal period. See February 2009 VA Neurosurgery Resident Note (documenting right lower extremity radicular symptoms); see also February 2014 VA Neurology Consult report (noting the Veteran's report of intermittent right sciatica). Thus, notwithstanding the report that right lower extremity sciatica was not present on examination in September 2017, the Board finds that service connection for sciatica of the right lower extremity is warranted on a secondary basis, as the requirement of a "current disability" is satisfied if a disorder is diagnosed at the time a claim is filed or at any time during the pendency of the appeal. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet. App. 289, 293; 38 C.F.R. § 3.310.

C. Right Ear Hearing Loss

For the purposes of the applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2013). "The threshold for normal hearing is between 0 and 20 [decibels], and higher thresholds indicate some degree of hearing loss." Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

Notably, "section 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service." Id. at 159. "Therefore, when audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a 'disability' at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service." Id. at 160.

Here, the evidence does not show that the Veteran has right ear hearing loss for VA compensation purposes. See 38 C.F.R. § 3.385. During a September 2017 VA examination, an examiner documented a right ear speech recognition score of 96 percent and documented the following pure tone thresholds, in decibels:


HERTZ
Sept. 2017
500
1000
2000
3000
4000
RIGHT EAR
20
20
25
20
20

Although the Veteran is competent to report a decrease in hearing acuity, the issue concerning whether the Veteran's level of hearing acuity amounts to a hearing loss disability for VA compensation purposes is not answerable by the application of knowledge within the realm of a lay person. See Layno, 6 Vet. App. at 469-70; Jandreau, 492 F.3d at 1377. Such an assessment requires audiological testing, which was provided.

In light of the foregoing, the Board finds that the preponderance of evidence is against service connection for right ear hearing loss because evidence of a present disability is necessary before service connection may be granted. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) ("Congress specifically limits entitlement to service-connected disease or injury where such cases have resulted in a disability . . . in the absence of a proof of present disability there can be no claim."); see also Palczewski v. Nicholson, 21 Vet. App. 174, 178-80 (2007) (specifically upholding the validity of 38 C.F.R. § 3.385 to define hearing loss for VA compensation purposes).

D. Headaches

The Veteran asserts that he had headaches in Iraq that have continued since service. See generally April 2008 correspondence; see also December 2017 Hearing Transcript, p. 11. Additionally, in March 2018, the Veteran's sister J.P. reported that she took the Veteran to a VA hospital in Pittsburgh, Pennsylvania, to address his headaches in early 1995.

The post-service evidence includes a March 2006 VA Neuropsychological Evaluation report that documents the Veteran's report that he was troubled by headaches and other physiological problems at that time and that he believes most of his problems began when he was still in Iraq and worsened after he was discharged from service in 1991. A May 2015 VA treatment record indicates that he has seen VA Neurology clinicians with regard to headaches and paresthesias that "Neurology felt was multifactorial in origin."

The Board finds that the Veteran is competent to report symptoms since service and that his account of having headaches since service is credible, as he has made regular reports of headaches that had their onset in service. See Layno, 6 Vet. App. at 470.

In light of the foregoing, the Board finds that service connection for headaches is warranted.

II. Withdrawn Claims

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105 (2012). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2017). Withdrawal may be made by the appellant or by his or her authorized representative. Id. 

In the present case, the Veteran requested to withdraw his appeal as to his claims for service connection for joint aches and muscle aches during his December 2017 Board hearing. This request is memorialized in the hearing transcript and is of record. See Tomlin v. Brown, 5 Vet. App. 355, 357-58 (1993). Hence, there remain no allegations of errors of fact or law for appellate consideration with regard to these issues. Accordingly, the Board does not have jurisdiction to review the appeal as to these issues and they are dismissed.

 (CONTINUED ON NEXT PAGE)


ORDER

Service connection for an unspecified depressive disorder is granted.

Service connection for diagnosed as lumbar disc disease, spinal fusion, and lumbosacral strain is granted.

Service connection for sciatica of the right lower extremity is granted.

Service connection for right ear hearing loss is denied.

Service connection for headaches is granted.

The appeal concerning the Veteran's claim for service connection for joint aches is dismissed.

The appeal concerning the Veteran's claim for service connection for muscle aches is dismissed.


REMAND

The following issues remain before the Board: (1) entitlement to service connection for fatigue; (2) entitlement to service connection for a right hand disability; and (3) entitlement to a TDIU.

With regard to the claim for service connection for fatigue, the Veteran testified in December 2017 that his fatigue is related to his stress level and he believes that his fatigue may be related to his now service-connected psychiatric disorder. In light of the foregoing, the Board finds that a remand of his claim for service connection is necessary to determine whether this condition is a manifestation of his service-connected psychiatric disorder. 38 U.S.C. § 5103A(d) (2012); 38 C.F.R. § 3.159(c)(4) (2017).

With regard to the claim for service connection for a right hand disability, the Veteran reported during his December 2017 hearing that he sustained a right hand injury at Fort Knox when he attempted to load tank targets onto a 2.5 ton truck on a windy day. According to the Veteran, one of his fingers was caught in one of the brackets, the finger was bent, he cracked a bone in his hand, and he wore a cast for four to six weeks thereafter. He also testified that he cannot remember whether the finger that is currently arthritic is the one that he injured in service and he does not believe that his reported in-service fracture is that cause of his pain.

In July 2005, a VA physician reported that the Veteran had post-service difficulties with his joints and limbs that he attributed to the strenuous activities that took place during his military career until 1991. Upon examination in September 2017, an examiner diagnosed him with degenerative arthritis of the right hand (MCP/PIP/DIP) and resolved right hand fracture per the Veteran's history. Notably, an X-ray showed tiny osteophytes in the DIP joint of the third digit, but there was no fracture, dislocation, osseous erosion, or soft tissue abnormality. The impression was minimal osteoarthritis in the third digit, osteopenia. The examiner reported that there is no evidence of a healed prior fracture or deformity, the findings of osteopenia and osteoarthritis are typical of normal physiologic aging along with a history of physical labor, and it is more likely than not that the Veteran's current right hand condition is more consistent with normal physiologic aging and a history of heavy labor than his reported time on active duty without accompanying documentation. As acknowledged above, the Veteran has reported engaging in heavy labor during service. Thus, notwithstanding the finding that a previous fracture was not shown on X-ray and his report that he is not sure whether his current finger disability is in the same finger that he injured during service, the Board finds that an addendum opinion that addresses the likely etiology of his current right hand disability must be obtained in light of his reported strenuous activity during service and in-service injury.

Additionally, given VA's obligation to maximize the Veteran's benefits, VA must determine whether the Veteran meets the criteria for a TDIU based on the aggregate impact of his service-connected disabilities. Thus, in light of the Board's grant of service connection for multiple disabilities and remand for additional development concerning the claims for service connection for fatigue and a right hand disability, the Board finds that adjudication of the TDIU claim must be deferred pending the assignment of ratings and readjudication of the service connection claims that remain on appeal. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Associate with the claims file all outstanding VA treatment records and any other pertinent records identified by the Veteran during the course of the remand. If any of the requested records are not available, this should be indicated in the file.

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of the nature of his fatigue and right hand symptoms. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. After completing the development requested above, provide an examination and obtain an opinion from an appropriate examiner regarding the current manifestations of the Veteran's psychiatric disorder, to include fatigue. 

A diagnosis of chronic fatigue syndrome must be ruled in or excluded.

The claims file should be made available to and be reviewed by the examiner.

In providing the requested information, the examiner is asked to comment specifically on the Veteran's report that his fatigue is related to his stress level and his belief that his fatigue may be related to his service-connected psychiatric disorder.

All findings, conclusions, and the rationale for all opinions expressed should be provided in a report, which must reflect the examiner's consideration and analysis of both the medical and lay evidence of record. 

4. Next, obtain an addendum opinion from the clinician who examined the Veteran's right hand in September 2017. If that clinician is unavailable, ask another appropriate clinician to provide the requested opinion. The claims file should be made available to and be reviewed by the reviewing clinician, and he or she must indicate whether such review was accomplished.

First, the clinician is asked to provide an opinion as to whether it is at least as likely as not that the Veteran's current right hand disability had its onset during his period of active service.

Second, the clinician is asked to provide an opinion as to whether it is at least as likely as not that the Veteran's current right hand disability had its onset within one year of his discharge from his period of active service.

Third, the clinician is asked to provide an opinion as to whether it is at least as likely as not that the Veteran's current right hand disability was otherwise caused or aggravated by his period of active service.

In providing the requested opinions, the reporting clinician is asked to comment specifically on the Veteran's report that he engaged in strenuous activity during service and injured his right hand when he attempted to load targets onto a truck on a windy day. 

All findings, conclusions, and the rationale for all opinions expressed should be provided in a report, which must reflect the reporting clinician's consideration and analysis of both the medical and lay evidence of record. The clinician is asked to provide rationale for all opinions offered.

5. Readjudicate the claims on appeal, after undertaking any additional development as may become necessary. If any of the benefits sought on appeal remain denied, issue the Veteran a Supplemental Statement of the Case and allow for a reasonable period for response.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs